**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **DAVID GERBEN**<br>537 Cleveland Road<br>Linthicum, Maryland 21090<br>*Resident of Anne Arundel County*<br><br>    Plaintiff,<br><br>***Individually and on Behalf of All***<br>***Similarly Situated Employees***<br><br>v.<br><br>**O.T. NEIGHOFF & SONS, INC.**<br>117 Holsum Way<br>Glen Burnie, Maryland 21060<br><br>    Serve:  Alan J. Hoyas, Sr.<br>        Resident Agent<br>        389 Edgewater Road<br>        Pasadena, Maryland 21122<br><br>and<br><br>**KENNETH D. NEIGHOFF**<br>637 Dunkeld Court<br>Severna Park, Maryland 21146<br><br>    Defendants. | Collective/Class Action Claims<br><br><br><br><br><br>Jury Trial Requested<br><br><br><br><br><br>Civil Action No.: |

## COLLECTIVE AND CLASS COMPLAINT FOR WAGES OWED

DAVID GERBEN, Plaintiff, individually and on behalf of all similarly situated employees, by and through his undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submits his Complaint against O.T. NEIGHOFF & SONS, INC. and KENNETH D. NEIGHOFF, Defendants, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as

amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq*. (hereinafter, "MWHL"), and unpaid wages, treble damages, interest, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq*. (hereinafter, "MWPCL"), and in support thereof, states as follows:

## INTRODUCTION AND BACKGROUND

This matter stems from the failure of Defendants, O.T. NEIGHOFF & SONS, INC. and KENNETH D. NEIGHOFF (hereinafter collectively, "Defendants") to pay Plaintiff and other similarly situated employees all their wages owed. As described herein, O.T. Neighoff & Sons, Inc., is a mid-sized company in the painting and construction industry. Its principal office and only location is in Glen Burnie, Maryland. Defendants serve clients throughout the mid-Atlantic region as well as on site at their principal office and headquarters.

Defendants hired Plaintiff to work as a Painter/Foreman. For the duration of his employment with Defendants, Plaintiff drove a work van and/or small truck from Defendants' headquarters to job sites and back. These vans and trucks were all under ten thousand pounds (10,000.00 lbs.). Plaintiff and other similarly situated employees would regularly load the work trucks at headquarters in the morning prior to departing for the job site with supplies, materials, and equipment. Plaintiff and other similarly situated employees would then unload the trucks and/or vans upon their return from the job sites. Plaintiff and other similarly situated employees would also occasionally have to pick up paint and/or supplies from Defendants' vendors as they were proceeding to the job site. Plaintiff and other similarly situated employees spent

approximately one (1) to two (2) hours each day performing these tasks without being compensated at all for this time.

The tasks performed by Plaintiff and other similarly situated employees prior to their arrival at the job sites and after their departure therefrom were time consuming. As stated above, Defendants service clients throughout the state of Maryland, as well as many other locations across the Mid-Atlantic Region. These locations are often located many miles away from Defendants' location, thereby requiring a substantial amount of drive-time both to and from the sites. Additionally, Defendants are responsible for providing all of the equipment needed for each job. Therefore, Plaintiff and other similarly situated employees were responsible for loading a large amount of equipment into the van(s) and/or truck(s). However, despite the excessive hours Plaintiff and other similarly situated employees were required to work outside of Defendants' clients' job sites, Plaintiff and others were not compensated for that time.

Defendants were able to avoid paying Plaintiff and other similarly situated employees by having them sign in only after they had reached the job site and sign out when they left the job site. Defendants failed to pay Plaintiff and other similarly situated employees for their work at headquarters, their travel time to and from job sites throughout the mid-Atlantic region, as well as time they spent loading and unloading work vans or trucks with materials, supplies, and equipment.

Plaintiff was terminated on February 17, 2017. However, he has still not received the wages owed to him by Defendants for the time spent working outside of the job sites. There is no bona fide dispute that Plaintiff is entitled to these wages. Yet Defendants have continually failed to provide Plaintiff with the wages owed to him, despite the time within which the wages were to be paid having long since passed.

Through these unlawful acts, Defendants evaded the payment of wages owed to Plaintiff and other similarly situated employees pursuant to the standards set forth by the FLSA, MWHL, and MWPCL. Upon information and belief, Defendants are still currently engaged in this unlawful activity.

## THE PARTIES

1. Plaintiff, DAVID GERBEN (hereinafter, "Gerben" or "Plaintiff") is an adult resident of Anne Arundel county, Maryland.

2. Defendant, O.T. NEIGHOFF & SONS, INC. (hereinafter, "N&S" or "Defendant"),[1] is a painting, drywall and construction services company, which has its principal office and only location at 117 Holsum Way, Glen-Burnie, Maryland 21060.

3. N&S provides services such as commercial painting and finishes, installing flooring, industrial media blasting and coating and other construction services to a range of clients including government agencies, the United States military, and private corporations. N&S performs industrial, marine, commercial, and residential construction-related services in the mid-Atlantic region as well as on site at their principal office. N&S is licensed to operate in the States of Maryland, Virginia, West Virginia, Delaware, Pennsylvania, New Jersey North Carolina and the District of Columbia. To service its clients, N&S employs various personnel including Foremen, Painters, Estimators, Managers and other administrative support staff.

4. Defendant, KENNETH D. NEIGHOFF (hereinafter, "Neighoff" or "Defendant") is the owner of N&S.

---

[1] Hereinafter, any reference to Defendant N&S, both individually or collectively, shall include its corporate officers and all those empowered to act as agents of the corporation, either explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency. To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

5.     Defendants are subject to the FLSA, MWHL and MWPCL due to the amount of annual revenues generated by N&S; Defendants' annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

6.     At all times relevant to this Complaint, Plaintiff engaged in interstate commerce given the nature of the duties he performed as part of his employment with Defendants.  Plaintiff regularly performed duties in different states on behalf of Defendant.  Plaintiff and other similarly situated employees also used goods that had been manufactured and distributed in interstate commerce.

7.     Plaintiff worked for Defendants, who, at all times throughout Plaintiff's employment, fell within the definition of the term "employer" under the FLSA, § 203(d), MWHL, § 3-401(b), and the MWPCL, § 3-501(b).

8.     N&S established the policies and procedures that resulted in the non-payment of wages complained of herein.  N&S had, and exercised, authority over the schedules, payments, and other terms and conditions of employment of Plaintiff and other similarly situated employees.

9.     Neighoff, as the owner of N&S, was instrumental in establishing the policies and procedures that resulted in the non-payment of wages complained of herein.  Neighoff had, and exercised, authority over the schedules, payments, and other terms and conditions of employment of Plaintiff and other similarly situated employees.

10.     At all times relevant, Plaintiff and others similarly situated worked as non-exempt employees for Defendant.  The duties assigned to Plaintiff and all others similarly situated do not satisfy the duties tests contained within the exemptions specified in the FLSA, MWHL, or the

MWPCL. Plaintiff and other similarly situated employees were paid an hourly wage throughout their employment.

11. From April 26 2006 to February 17, 2017, Plaintiff was employed with Defendants and held the title of "Painter/Foreman."

12. At all times relevant to this Complaint, Defendants and/or their agents controlled the administration of their business and set employee schedules, including the schedule of Plaintiff and the schedules of other similarly situated employees.

13. Defendants possessed and exercised the authority to schedule and control the hours worked by Plaintiff and other similarly situated employees.

14. Defendants had and exercised the authority to control Plaintiff's tasks and the tasks of other similarly situated employees.

15. Defendants had and exercised the power and authority to change the course of Plaintiff's duties and the duties of other similarly situated employees.

16. Plaintiff and members of the putative collective action recognized Defendants' authority and obeyed Defendants' instructions.

17. Defendants made all decisions relating to the wages and method of pay for Plaintiff and other similarly situated employees.

## JURISDICTION AND VENUE

18. Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

19. Discretionary supplemental jurisdiction of Plaintiff's Maryland state law claims is provided by 28 U.S.C. § 1367 (a); the state law claims form part of the same case or controversy

and derive from a common nucleus of operative facts on which Plaintiff's federal claims are based.

20.     Furthermore, no reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction, and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. § 1367(c).

21.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate as most of the unlawful acts central to this matter occurred within the State of Maryland.

22.     This Honorable Court has personal jurisdiction over Neighoff as he is a resident of Maryland.  Similarly, this Honorable Court has personal jurisdiction over N&S as it is a corporation which (i) is incorporated under the laws of Maryland and (ii) conducts sufficient business within the state of Maryland such as to constitute a submission to its laws.

<u>**FACTUAL ALLEGATIONS FOR ALL CLAIMS**</u>

*<u>Employment</u>*

23.     Defendant provides construction and paint services to its clients across the Mid-Atlantic Region.

24.     On April 26, 2006, Plaintiff was hired by Defendants to work as a Painter/Foreman.

25.     Plaintiff held the same position for the entirety of his employment with Defendants until he was terminated on February 17, 2017.

26.     Plaintiff's general duties included painting, hanging drywall, installing flooring driving the company van(s) and/or truck(s), loading and unloading the van(s) and/or truck(s), occasionally picking up paint or other supplies from Defendants' vendors, as well as working with and supervising a crew of two (2) to (5) employees on various job sites.

27.     For the entirety of his employment with Defendants, Plaintiff's jobs were assigned by Plaintiff's supervisors, Tim Surgeon, the Field Superintendent and/or Duffie Fernandez, the Vice President of N&S.  Mr. Surgeon and Mr. Fernandez prepared the work schedules for each job and determined which Painter/Foreman and crew members would work on a particular job.

28.     Defendants employed five (5) or six (6) individuals who held the title of Painter/Foreman at any given time.  Each Painter/Foreman was required to pick up a work schedule at the main office each time they were assigned a new job. The duration of each job/contract varied anywhere from a few days to a year or more.  During the life of the contract, the Painter/Foreman was not required to pick up new work schedules unless a change was made to the contract the Painter/Foreman was assigned to, or the Painter/Forman was reassigned. However, each Painter/Forman was still required to begin his or her workday from Defendants' location, as the van(s) and/or truck(s) needed to be picked up, loaded, and driven to the job site.

29.     On a daily basis, Plaintiff would arrive at Defendants' location where he would, *inter alia*, pick up his crew which normally consisted of between two (2) to five (5) employees. Plaintiff and his crew would then dispose of the trash left in the van(s) and/or truck(s) the previous day by placing it in the dumpster located at or near Defendants' headquarters.  Plaintiff

and his crew would then load up the company van(s) and/or truck(s) with supplies, materials, and equipment needed for the day's job.

30.     After loading the van(s) and/or truck(s), Plaintiff and the crew would proceed to the job site.  If needed, while on their way to the job site, Plaintiff would stop to pick up paint and/or other supplies from Defendants' chosen vendors.  Plaintiff was the designated driver for his crews.  All of these duties were performed "off the clock."  Plaintiff and other similarly situated employees were not permitted to "clock in" until they arrived at the job site.

31.     As noted above, Plaintiff would occasionally need to pick up paint or supplies for the job.  Defendants had three (3) to four (4) Estimators, who coordinated supplies and paint needed for each job. Whenever Plaintiff had to buy paint or supplies, he would pick up a purchase order from the office and take it to the vendor.

32.     Defendants' vendors included Sherwin Williams, Budeke's Paints and PPG Paints Store.  Plaintiff would pick up paint or supplies from the closest locations, namely Glen Burnie, Elkridge and Baltimore.

33.     On arrival at the vendor's store, he would submit the purchase order, sign for the paint or supplies, and load the truck with the materials.  Plaintiff had no discretion over the type, quality, or quantity of the paint or other supplies he picked up.  These elements were specifically delineated in the purchase orders given to Plaintiff by Defendants.  Plaintiff was merely responsible for ensuring that an order satisfied the directives of the purchase order.

34.     If Plaintiff needed additional supplies and/or paint during the workday, Plaintiff would call the Estimator and request a purchase order over the phone. Plaintiff would then drive to an approved vendor and purchase the materials.

35.     Plaintiff's and his crew's time was tracked on time sheets.  Plaintiff and other similarly situated employees were told to sign on to the time sheet only upon arrival at the job site.  Similarly, Plaintiff and other similarly situated employees were told to sign off when they left the job site for the day.  Defendants made clear that Plaintiff and other similarly situated employees were not to fill out any other times as their sign-in time or their sign-out time.

36.     On arrival at the job site, Plaintiff and his crew would unload the supplies and equipment and proceed to work: painting, repairing drywall, painting flooring and other tasks as needed.  Each job was different.  Plaintiff and his crew would work anywhere from eight (8) to ten (10) hours on-site each day, depending on their assigned shift for the job as well as the needs of the client.

37.     Plaintiff was required to call one of Defendants' Estimators to approve the purchase of any additional supplies or equipment when it was determined that the existing supplies were insufficient and that more would be needed for the successful completion of the job.

38.      In addition to his own physical duties, Plaintiff was charged with monitoring the work of the crew members to ensure their compliance with Defendants' safety and quality standards. With regard to any issues or complaints from the crew members themselves, Plaintiff was required to call his supervisor, Tim Surgeon for direction.

39.     At the end of their shift, Plaintiff and his crew would gather the equipment, load the van(s) and/or truck(s) with any leftover and/or unused materials, and return to the Glen Burnie headquarters.  On arrival at Defendants' headquarters  at the end of the day, Plaintiff and the crew would leave in their personal vehicles.

40.     Plaintiff and other similarly situated employees worked on various jobs and at various locations for Defendants.   Within the three (3) years preceding the filing of this Complaint, Plaintiff worked on various contracts/jobs throughout Maryland, including ones located at the National Security Agency, Fort Meade Military Base, Andrews Airforce Base, the Naval Academy, John Hopkins Applied Physics Laboratory in Laurel, Thor Labs in Howard County, the Pagoda in Patterson Park, Proctor & Gamble in Timonium, a car auction site in Harford County and at other locations as needed.

### *Schedule/Hours Worked*

41.     Plaintiff had varying schedules depending on the job(s) to which he was assigned. Plaintiff was typically assigned one of two shifts: (1) the first shift began at 7:00 a.m. and was scheduled to end at 3:30 p.m. five (5) days per week, (2) while the second shift began at 6:00 p.m. and was scheduled to end at 4:30 a.m., four (4) days a week.  Plaintiff would sometimes work an extra day or two, as well as some weekends.  Plaintiff's schedule varied to fit the needs of Defendants' clients.  The start times depicted above were the times where Plaintiff and other similarly situated employees were to be present at the job site.

42.     As discussed above, Plaintiff and other similarly situated employees consistently performed work both before and after they arrived at the job site.   Due to the additional uncompensated time spent loading and unloading trucks, gathering crew members, travelling to and from job sites and occasionally stopping to pick up pain and/or supplies, Plaintiff and other similarly situated employees frequently worked as many as sixty (60) to (65) hours each week in total.

43.     Plaintiff had no discretion in the assignment of the jobs as Defendants and their agents/managers made the major decisions and assigned the various jobs to the foreman.

44.     For the duration of his employment, Plaintiff did not have the authority to hire or fire other employees.

45.     For the duration of his employment, Plaintiff performed essentially the same tasks performed by his crew members as well as the additional supervisory tasks noted above.

46.     For the duration of his employment, Plaintiff did not implement or change any policies or procedures of the Defendants nor make any recommendations to do so.

47.     For the duration of his employment, Plaintiff did not perform any complex analysis or write any reports.

48.     For the duration of his employment, Plaintiff did not interpret any information.

49.     Plaintiff satisfied the requirements of his job as a working foreman and adequately performed his duties to benefit Defendants, as well as Defendants' customers.

50.     Throughout the course of his employment, Plaintiff was provided with a work van(s) and/or truck(s) to get to and from project sites and to transport his crew, supplies and equipment.  Plaintiff did not take that vehicle home.

### *Wages*

51.     For the entirety of his employment with Defendants, Plaintiff worked as an hourly employee.

52.     Plaintiff and other similarly situated employees were paid based on the hours reflected on their timesheets.  As discussed above, these hours reflected only the time spent at Defendants' clients' job sites.

53.     For the aforementioned work, from approximately April 1, 2006 to February 17, 2017, Plaintiff received hourly rates that went from twenty-one dollars ($21.00) per hour at the onset of his employment, to twenty-six dollars ($26.00) per hour by the end of his employment.

By the start of the relevant period, Plaintiff's hourly rate was set at twenty-five dollars ($25.00) per hour. Plaintiff's rate increased to twenty-six dollars ($26.00) per hour on or about July 25, 2016. Plaintiff was paid an hourly rate of twenty-six dollars ($26.00) per hour for the remainder of his employment.[2]

54.     As discussed above, Plaintiff and other similarly situated employees regularly worked over forty (40) hours per week at Defendants' clients' job sites. Whenever they worked such overtime, they received overtime wages paid at time-and-a-half their regular hourly rate.

55.     Plaintiff and other similarly situated employees were not paid for the additional hours of work before and after they arrived at and left the job sites.

56.     There is no bona fide dispute that Plaintiff and other similarly situated employees are owed these additional wages.

57.     Defendants and/or their agents were well aware of the time Plaintiff and other similarly situated employees spent loading and unloading the work van(s) and/or truck(s), traveling to and from job sites, as well as occasionally picking up paint/supplies, yet they made no effort to pay Plaintiff and other similarly situated employees for that time, which was approximately one (1) to two (2) hours per day.

58.     Defendants and/or their agents were actively engaged in the scheduling, management and direction of Plaintiff and other similarly situated employees.

59.     Defendants and/or their agents controlled and supervised the work performed by Plaintiff and other similarly situated employees and suffered or permitted them to work more than forty (40) hours a week.

---

[2] Plaintiff was occasionally paid at higher rates for specific jobs. This depended entirely on whether the contract between the client and N&S was subject to the Davis Bacon Act, thus requiring the payment of "scale pay" rates to Plaintiff and other similarly situated employees based on their classification and the location of the particular job.

60.     In bad faith, Defendants withheld additional regular and overtime wages owed to Plaintiff and other similarly situated employees.   Even after Plaintiff inquired about these unpaid wages Defendants continued to refuse to compensate Plaintiff and other similarly situated employees properly for all hours worked.

61.     Thus, Plaintiff seeks his wages owed and other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

62.     Defendants employed Plaintiff and other similarly situated employees to work as hourly employees for Defendants.   Similarly situated employees to Plaintiff held titles like Painter/Foreman, Painter, Laborer, and other titles consistent with general construction and remodeling work.

63.     All hourly employees that performed duties related to construction and remodeling at Defendants' clients' job sites were subject to the same practices and are included amongst those similarly situated.   These similarly situated employees are all members of the putative Collective class.

64.     The FLSA requires employers to compensate non-exempt employees such as Plaintiff and other similarly situated employees for all hours worked and overtime wages for all hours worked over forty (40) within a single workweek.

65.     Defendants knew that Plaintiff and other similarly situated employees typically and customarily worked over forty (40) hours per week

66.     Defendants suffered or permitted Plaintiff and other similarly situated employees to work more than forty (40) hours per week.

14

67.     Defendants knew or should have known that Plaintiff and others similarly situated were entitled to regular wages for all hours worked and overtime wages for all hours worked over forty (40) in a single workweek.

68.     Pursuant to the FLSA, Plaintiff commences this collective action against Defendants on behalf of himself and those similarly situated.

69.     Plaintiff demands damages reflecting an overtime rate of not less than one and a half (1.5) times his regular rates of pay for all unpaid hours worked over forty (40) in any workweek within the applicable statute of limitations.  Plaintiff makes these same demands on behalf of all members of the putative Collective class.

70.     Plaintiff consents to be party plaintiff in this matter; Plaintiff's consent form is attached to this complaint as Exhibit A.

71.     It is likely that other individuals will join Plaintiff during the litigation of this matter and file written consents to "opt in" to this collective action.

72.     There are numerous similarly situated current and former employees of Defendants that have been harmed by Defendants' common scheme to underpay its employees and violate the FLSA and are thereby fit for membership in the Collective class of similarly situated employees.

73.     These similarly situated persons are known to Defendants and are readily identifiable through Defendants' records.

74.     Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit as members of the Collective class.

75.     Upon information and belief, other similarly situated employees will choose to join Plaintiff in this action against Defendants and opt in to this lawsuit to recover unpaid wages and other available relief.

## CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS

76.     Plaintiff brings this action Pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and other current and former employees that served as hourly employees for Defendants and were subject to the following practices and policies:

77.     Denial of overtime wages under MWHL for all hours worked over forty (40) in a single workweek; and

78.     Failure to pay all wages owed at the termination of employment in violation of the MWPCL.

79.     These hourly employees held various titles, including Painter/Foreman, Painter, Laborer, and other titles commonly associated with construction and remodeling work.

80.     The classes Plaintiff seeks to represent are defined as:

*MWHL Class*

> All individuals who are or were employed by Defendants as hourly employees who performed their duties, in whole or in part, at Defendants' clients' job sites, for any period ranging from **Date of Filing of Complaint minus 3 years** to the present and who were not paid all their overtime wages for all hours worked over forty (40) in a workweek in violation of the MWHL and thus did not receive proper wages for all hours worked over forty (40) in a workweek in violation of the MWHL.

*MWPCL Class*

> All individuals who were, but are no longer, employed by Defendants as hourly employees who performed their duties, in whole or in part, at Defendants' clients' job sites, for any period of time ranging from **Date of Filing of Complaint minus 3 years** to the present and who were not paid their regular wages for all hours

worked, and were not paid all their overtime wages for all hours worked over forty (40) in a workweek in violation of MWHL, and thus did not receive all wages owed to them before the termination of their employment with Defendants in violation of the MWPCL.

81. *Numerosity:* The individuals in the Classes are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, on information and belief, the Classes both includes a large number of employees who are readily identifiable through Defendants' pay records. Defendants service hundreds of clients through its hourly employees. The sheer volume of Defendants' business required that Defendants employ a large number of Painter/Foremen, Painters, Laborers, and other employees at all times. Consequently, numerosity exists.

82. *Commonality:* There are questions of law and fact common to the classes. Among the common questions of law and fact applicable to Plaintiff and the classes are:

i. Whether the MWHL Class is similarly situated because they all performed the same basic duties and were subject to Defendants' common policy and practice of not paying them overtime;

ii. Whether Defendants employed the MWHL Class within the meaning of MWHL;

iii. Whether Defendants violated MWHL by failing to pay Plaintiff and the MWHL Class overtime compensation for all hours worked in excess of forty (40) hours per workweek;

iv. Whether Defendants' violations of MWHL were willful;

v. Whether Defendants employed the MWPCL Class within the meaning of the MWPCL;

vi. Whether Defendants failed to provide Plaintiff and other members of the MWPCL Class with all wages due at the time their employment ended in violation of the MWPCL;

vii. Whether Defendants' violations of the MWPCL were willful; and

viii. Whether Defendants are liable for damages claimed herein, including but not limited to, compensatory, liquidated or treble, statutory, interest, costs and attorneys' fees.

83. *Typicality:* Plaintiff's claims are typical of those of the Class members. Specifically, each and every class member of both the MWHL Class and the MWPCL Class worked as an hourly employee for Defendants and was charged with working for Defendants on various contracts and jobs. Each and every MWHL Class member was required to work over forty (40) hours per workweek during the course of their employment. Every member of the MWPCL Class failed to receive all wages owed to them at the end of their employment. Each member of both classes performed work outside of the time they spent on-site at Defendants' clients' job sites. As a result, each and every class member suffered the same or similar harm. This was due to Defendants' failure to pay overtime wages for all hours worked in excess of forty (40) hours per workweek, the failure to pay regular wages to for all hours worked, and the subsequent failure to pay to Plaintiff and other members of the MWPCL Class all wages owed to them at the conclusion of their employment. This constitutes a direct violation of MWHL, as well as an eventual violation of the MWPCL.

84. *Adequacy:* Plaintiff will fully and adequately protect the interests of the classes. He seeks the same recovery as the classes, predicated upon the same violations of the law and the same damage theory. Plaintiff has also retained counsel who are qualified and experienced in the

prosecution of statewide wage and hour class actions.  Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the classes.

85. *Predominance:* The common issues of law and fact predominate over any individual issues.  Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one set of facts.  This is based on Defendants' failure to pay all overtime wages as required by MWHL, Defendants' failure to pay all regular wages owed for work performed by their employees, and their subsequent failure to pay all wages due at the end of an individual's employment as required by the MWPCL.  Similarly, the damages are certifiable in that Defendants' records will provide the amount and frequency each class member was paid. The amount of time each class member worked is also available through Defendants' records.

86. This action is maintainable as a class action.  The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes.   This would establish incompatible standards of conduct for Defendants.  If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a drain and burden on judicial resources.

87. Accordingly, the Court should certify the proposed classes

## CAUSES OF ACTION AND VIOLATIONS OF LAW

*Against Defendants, O.T. Neighoff & Sons, Inc. & Kenneth D. Neighoff*

**Count I.  *Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiff and All Members of the Collective Class Who, During the Course of This Matter, Opt-In to the Suit by Submitting their Consent Forms to Become Party Plaintiffs.***

88. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

89.     Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for all hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

90.     As described above, Plaintiff has not received from Defendants compensation reflecting the prescribed overtime wage rate for additional hours worked in excess of forty (40) in a week.

91.     Defendants willfully and intentionally failed to compensate Plaintiff for all the overtime hours he worked.

92.      There is no bona fide dispute that Plaintiff is owed additional overtime wages for work performed for Defendants.

93.     All members of the putative Collective are similarly situated to Plaintiff, and have suffered the same and/or similar harm resulting from the same policies and practices complained of in this Complaint.

94.     Under the FLSA, Plaintiff and all members of the Collective are entitled to additional wages from Defendants to compensate him for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiff's and each member of the Collective's regular hourly wage rate.

**Count II.** *Violation of MWHL: Failure to Pay Overtime Wages to Plaintiff, All those Appropriately Joined in this Matter, and All Members of the MWHL Class, to be Certified by Motion During the Course of This Matter.*

95.     Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

96.     Pursuant to MWHL, Md. Code Ann., Lab. & Empl. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

97.     Furthermore, pursuant to Md. Code Ann., Lab. & Empl. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

98.     Plaintiff has not received compensation from Defendants reflecting the prescribed overtime wage rate for all hours worked in excess of forty (40) in a week.

99.     Defendants willfully and intentionally did not compensate Plaintiff for all the overtime hours he worked. There is no bona fide dispute that Plaintiff is owed additional overtime wages for the work he performed for Defendants.

100.    All members of the MWHL Class are similarly situated to Plaintiffs, and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

101.    Under MWHL, Plaintiff and members of the MWHL Class are entitled to additional wages from Defendants for additional overtime hours worked at a rate of one and one-half (1.5) times Plaintiff's and each MWHL Class member's regular hourly rate.

**Count III.** *Violation of the MWCPL: Failure to Pay Wages Owed at or Before the Termination of Their Employment to Plaintiff, All those Appropriately Joined in this Matter, and All Members of the MWPCL Class, to be Certified by Motion During the Course of this Matter.*

102.    Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

103.    Plaintiff is entitled to wages under the MWPCL, Md. Code Ann., Lab. & Empl. §§3-501 *et. seq.,* which provides that each employer shall pay an employee all wages due for work that

the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid his wages.

104. Plaintiff has not received compensation from Defendants for all wages owed for work performed before the termination of his employment in accordance with §3-505(a). This is specific to Defendants' failure to pay Plaintiff overtime for all hours worked over forty (40) in a workweek as well as Defendants failure to pay Plaintiff for all hours worked at his regular hourly rate. Similarly, Defendants failed to pay the members of the MWPCL Class correctly in the same manner.

105. Defendants willfully and intentionally withheld from Plaintiff and all members of the MWPCL Class the wages owed to them and continued to violate the MWPCL, even after Plaintiff and others informed Defendants of the violation.

106. All members of the MWPCL Class are similarly situated to Plaintiff, and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

107. Under the MWPCL, there is no bona fide dispute that Plaintiff and all members of the MWPCL Class are owed additional wages for work performed while employed by Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself and others similarly situated, prays for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

b) In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a class action on behalf of Plaintiff and all members of the proposed classes;

c)      Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and emails of all those individuals who are similarly situated and permitting Plaintiff to send notice of this action to all those similarly situated individuals;

d)      Designating the named Plaintiff to act as class representative on behalf of all similarly situated employees for both the FLSA Collective class and the Maryland state law classes;

e)      Judgment against Defendants for their failure to pay Plaintiff, those similarly situated, and all those appropriately joined to this matter in accordance with the standards set forth by the FLSA;

f)      Judgment against Defendants for their failure to pay Plaintiff, the members of the MWHL Class, and all those appropriately joined to this matter in accordance with the standards set forth by MWHL;

g)      Judgment against Defendants for their failure to pay Plaintiff, the members of the MWPCL Class, and all those appropriately joined to this matter in accordance with the standards set forth by the MWPCL;

h)      Judgment against Defendant and classifying its conduct as willful and not in good faith;

i)      Judgment against Defendant and classifying Plaintiff, the Collective and the Classes as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

j)      An award against Defendant for the amount of unpaid overtime wages owed to Plaintiff, members of the Collective, members of the MWHL Class, and all those appropriately joined to this matter calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' and others' respective regular hourly rate for all overtime hours worked;

k)      An award against Defendant for the amount of unpaid wages owed to Plaintiff, members of the MWPCL Class, and all those appropriately joined to this matter calculated at Plaintiff's and others' respective regular hourly rate for all unpaid hours worked under forty (40) in a given workweek;

l)      An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiff, members of the Collective, members of the classes, and all those appropriately joined to this matter, whichever is deemed just and equitable by this Honorable Court;

m)   An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendants;

n)   Leave to add additional Plaintiffs to all Counts alleged herein by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

o)   All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of his peers hear and decide all possible claims brought on his behalf and on behalf of those similarly situated.

Respectfully submitted,

*/s/ George E. Swegman*
George E. Swegman, Esquire (#19444)
gswegman@nicholllaw.com
Benjamin L. Davis, Esquire (#29774)
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiff*
