```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
DAVID GERBEN,
                                *
          Plaintiff
                                *
     vs.                            CIVIL ACTION NO. MJG-17-1346
                                *
O.T. NEIGHOFF & SONS, INC.,
et al.                          *

          Defendants        *

*    *    *    *    *    *    *    *    *
```

MEMORANDUM AND ORDER RE: MOTION FOR CONDITIONAL
CERTIFICATION OF A COLLECTIVE CLASS

The Court has before it Plaintiff's Motion for Conditional Certification of a Collective Class and to Facilitate Identification and Notice to Similarly Situated Employees and the materials submitted relating thereto [ECF No. 10]. The Court finds that a hearing is not necessary.

I.   BACKGROUND

   A. The Parties and the Claims

David Gerben ("Gerben" or "Plaintiff") brings an action individually and on behalf of other similarly situated employees of O.T. Neighoff & Sons ("OTN") and Kenneth D. Neighoff (together, "Defendants"). Plaintiff alleges that Defendants did not pay him and other similarly situated employees their full wages owed, including overtime wages, in violation of the

federal Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL").

Plaintiff Gerben seeks class certification as well as recovery of unpaid overtime wages, liquidated or treble damages, interest and costs, and reasonable attorneys' fees.

B. Statement of Facts[1]

Defendant O.T. Neighoff & Sons, Inc. ("OTN") is a mid-sized painting and construction company in Glen Burnie, Maryland, and Kenneth D. Neighoff is the owner of OTN. Compl. at 4, ECF No. 1. Plaintiff Gerben was hired as a "Painter/Foreman" for the Defendants on April 26, 2006, and held that same position until he was terminated on February 17, 2017. Id. ¶¶ 24-25. As Painter/Foreman, his duties included "painting, hanging drywall, installing flooring[,] driving the company van(s) and/or truck(s), loading and unloading the van(s) and/or truck(s), occasionally picking up paint or other supplies from Defendants' vendors, . . . and supervising a crew of two (2) to (5) employees on various job sites." Id. ¶ 26. Plaintiff was given a work schedule each time he was assigned to a new job, and he

---

[1] The "facts" stated herein are based on the Complaint and are not necessarily agreed upon by Defendants.

would be required to follow that work schedule unless the job changed or unless he was reassigned to another job. Id. ¶ 28. Plaintiff states that he had no discretion in choosing his assignments. Id. ¶ 43.

Plaintiff was paid as an hourly employee. Id. ¶ 51. He would begin his day at Defendants' location, pick up his crew, "dispose of the trash left . . . the previous day," load up the company vans or trucks with equipment, and drive to the job site. Id. ¶¶ 29-30. Occasionally on the way to the job site, Plaintiff would pick up paint and/or supplies from Defendants' chosen vendors. Id. ¶ 30. Although shift times would often vary, Plaintiff would work about 8 to 10 hours on-site per shift. Id. ¶ 36. After the shift was complete, Plaintiff would "gather the equipment, load the van(s) and/or truck(s) with any leftover and/or unused materials, and return to the Glen Burnie headquarters." Id. ¶ 39.

Plaintiff's work hours were tracked on time sheets, and he was only permitted to "clock in" and be paid for the time that he was physically at the job site. Id. ¶ 30. Defendants "made clear that Plaintiff and other similarly situated employees were not to fill out any other times as their sign-in time or their sign-out time." Id. ¶ 35. In other words, Plaintiff alleges he

3

was not paid for the time spent before and after the shift loading the trucks, driving to and from the site, and picking up supplies. As a result, Plaintiff states that he and other similarly situated employees would often work as many as 60 to 65 hours a week without being paid for the time spent on job related duties before and after clocking in to the job site. Id. ¶¶ 42-43.[2]  Plaintiff estimates that he was not compensated for 1 to 2 such overtime hours per day. Id. ¶ 57. He alleges that Defendants knew about the extra unpaid hours that Plaintiff puts in each day yet "withheld additional regular and overtime wages owed" and refused to take corrective action when Plaintiff asked about compensation for these hours. Id. ¶ 60.

Plaintiff's allegations are brought on behalf of similarly situated employees with titles such as "Painter/Foreman, Painter, Laborer, and other titles consistent with general construction and remodeling work." Id. ¶ 62. He alleges that these hourly employees "were subject to the same practices," worked "over forty (40) hours per week," and were harmed by

---

[2] Plaintiff states that he and other similarly situated employees regularly worked over forty (40) hours per week and would receive "overtime wages paid at time-and-a-half their regular hourly rate." Id. ¶ 54. The Court understands Plaintiff's contention to be that he was not allowed to count certain hours as overtime, not that he was not paid for overtime that was properly counted.

"Defendants' common scheme to underpay its employees." Id. ¶¶ 63, 65, 72. Plaintiff now seeks the conditional certification of a collective class to facilitate identification and notice to similarly situated employees so that they may "opt-in" to the collective action. Pl.'s Mot. at 11, ECF No. 10-1.

II. LEGAL STANDARD

Plaintiff's FLSA challenge is brought under Section 207 of the FLSA, which governs overtime compensation. Section 216(b) of the FLSA authorizes collective actions if employees are "similarly situated":

> An action to recover the liability prescribed in [Section 207 and other sections] may be maintained against any employer . . . in any Federal . . . court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216. As such, Section 216(b) "'establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit.'" Mackall v. Safelite Grp., Inc., No. CV CCB-17-2145, 2017 WL 6039717, at *2 (D. Md. Dec. 5, 2017). District courts

5

"have discretion, in appropriate cases, to allow such claims to proceed as a collective action and to facilitate notice to potential plaintiffs."  Quinteros v. Sparkle Cleaning, Inc., 532 F. Supp. 2d 762, 771 (D. Md. 2008).

In these cases, the court should first determine that plaintiffs have demonstrated that potential class members are similarly situated such that court-facilitated notice to the putative class members would be appropriate, and second, after discovery closes, the court should conduct "a 'more stringent inquiry' to determine whether the plaintiffs are in fact 'similarly situated,' as required by § 216(b)."[3]  Mackall, 2017 WL 6039717, at *2.

This case is in its first stage, the "notice" stage.  Thus, the question now at issue is "whether the plaintiffs have proffered enough for the court to make the threshold determination that they are similarly situated to a group of potential plaintiffs."  Id.  Plaintiffs are "similarly situated" "if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law."  Id.

---

[3] See also Robinson v. Empire Equity Grp., Inc., No. CIV. WDQ-09-1603, 2009 WL 4018560, at *2 (D. Md. Nov. 18, 2009) ("After discovery is complete and more factual information is available to the court, the defendant may file a motion to decertify the class.").

They <u>do not</u> need to make a showing that their claims are "identical." <u>Id.</u> Rather, at this stage, plaintiffs are only required to make "a relatively modest factual showing," and they "cannot reasonably be expected . . . to have evidence of a stated policy of refusing to pay overtime." <u>Id.</u>

Other relevant factors in the class certification determination include: "an adequate showing that there are other yet-unidentified coworkers in the same position, adequate evidence that other potential plaintiffs were subjected to the same FLSA violations, and, when determining the breadth of notice, the likelihood that there are class members not currently in the immediate area." <u>Montoya v. S.C.C.P. Painting Contractors, Inc.</u>, No. CIV. CCB-07-455, 2008 WL 554114, at *2 (D. Md. Feb. 26, 2008) (citing <u>Marroquin v. Canales</u>, 236 F.R.D. 257, 260 (D. Md. 2006)).

Ultimately, the determination of the appropriateness of conditional collective action certification and court-facilitated notice is "left to the court's discretion." <u>Syrja v. Westat, Inc.</u>, 756 F. Supp. 2d 682, 686 (D. Md. 2010). Indeed, "a court may determine that conditional certification is inappropriate where multiple claims cannot be adjudicated efficiently because they would require 'substantial

7

individualized determinations for each class member.'"  Id.

### III.  DISCUSSION

Plaintiff states that "[s]imilarly situated employees to Plaintiff held titles like Painter/Foreman, Painter, Laborer, and other titles consistent with general construction and remodeling work."  Compl. ¶ 62, ECF No. 1.  He asserts that hourly employees who performed duties "related to construction and remodeling" at Defendants' clients' job sites were "subject to the same practices."  Id. ¶ 63.

Defendants argue that Plaintiff's motion should be denied because he (1) cannot demonstrate that OTN has company-wide policies or practices that violated the law, (2) cannot demonstrate that he is similarly situated to the proposed class of employees that he seeks to represent, and (3) the individualized, fact-intensive inquiries required in this matter render this case inappropriate for class treatment.  Def.'s Opp. at 2, ECF No. 11.

The Court finds that Plaintiff has made a sufficient showing to allow his claim to proceed as a collective action. He has submitted a Declaration with his motion stating:

- Defendant Kenneth Neighoff designed Plaintiff's schedule and the schedules of all other painters and foremen.

   Gerben Decl. ¶ 4, ECF No. 10-2.  Painters and foremen worked similar schedules.  Id. ¶ 12.  Defendant Kenneth Neighoff also managed Defendants' pay practices.  Id. ¶ 4.

- Other painters and foremen also received an hourly wage for the work they performed.  Id. ¶ 6.

- Defendants typically employed at least five or six foremen at any given time, and each foreman had a crew of two to five painters.  Id. ¶¶ 8-9.

- The foreman and painters were "paid according to the same practices that [Gerben] was subject to," including being required to "begin our workday at Defendants' office and return to the office before going home for the day" in order to "load[] and unload[] [work] supplies."  Id. ¶ 9.

- In addition to loading the trucks, the foremen may stop to pick up paint and other supplies from vendors on the way to the job site.  Id. ¶ 10.

- Foremen and painters were not allowed to clock in until arriving at the job site, "regardless of what tasks [they] performed in the interim."  Id.  The employees' time was tracked on time sheets and they "were told to sign in on the time sheets only when [they] arrived at the job site" and "required to sign out when we left the job site for the day."  Id. ¶ 11.  Plaintiff states that "[i]t was made clear to [them] that [they] were not to sign in for the times [they] spent traveling or picking up supplies."  Id.

- Plaintiff states that "we" (presumably, foremen and painters) "frequently inquired about our failure to receive hourly wages for the time spent loading and unloading Defendants' vehicles," and "Defendants simply ignored our inquiries."  Id. at 14.

- Plaintiff is aware of others who are interested in joining this lawsuit.  Id. at 15.

   Plaintiff has also submitted the Declaration of Sheila Tate, a former employee with Defendants who was "originally

9

hired to work as a painter's helper" but eventually was "promoted to foreman in their flooring department." Tate Decl. ¶ 5, ECF No. 16-1. Her Declaration includes the same or similar statements as those made by Plaintiff Gerben.

Plaintiff has presented a relatively simple and straightforward version of the alleged facts: Plaintiff and other foremen and/or painters who consistently worked off-site shifts contend that they are entitled to payment for time they spent doing necessary work before and after arriving at job sites, but that Defendants consistently did not pay for this work. Based on the allegations in the Complaint and in the two submitted Declarations, the Court finds that Plaintiff plausibly asserts that he is "similarly situated" to other foremen and/or painters who conduct similar work on off-site job sites.[4] The Court also finds that allowing the case to proceed as a collective action would be more efficient and effectuate the purposes of the FLSA.

Defendants argue that Plaintiff has not demonstrated the existence of an unlawful common policy or plan to meet the "similarly situated" requirement or to warrant a collective

---

[4] Because Plaintiff has not provided factual support for other classes of workers, the Court will not make such a finding as to any "Laborers" or employees with "other titles consistent with general construction and remodeling work." Compl. ¶ 62.

10

action.  Def.'s Opp. at 5, ECF No. 11.  Rather, Defendants argue, there is ample evidence that OTN's company policy is to pay all overtime wages that are owed.  Id. at 5-6.  They present and cite to a number of Declarations from their current employees affirming that there is no deviation from OTN's stated wage policy.  Id. at 6-7.

However, at this stage, Plaintiff is only required to make "a relatively modest factual showing," and he "cannot reasonably be expected . . . to have evidence of a stated policy of refusing to pay overtime."  Mackall, 2017 WL 6039717, at *2.  The Court finds it sufficient for present purposes that both the Declarations of Gerben and Tate state that foremen and painters were not allowed by Defendants to track any time working that was completed off of the job-site, that foremen have inquired about the overtime wages they believed they were entitled to and that Defendants ignored those inquiries.  Tate Decl. ¶¶ 10-11, 14; Gerben Decl. ¶¶ 10, 14.

Defendants challenge the accuracy of factual allegations made in the Complaint.  For example, Defendants present certain of Plaintiff's self-prepared daily timesheets, which "reflect itemized time for cleaning up the shop, gathering and loading supplies, travel to the paint store and driving, fueling,

11

loading, unloading, and cleaning Company vehicles for which he was paid in obvious contradiction of his claims." Def.'s Opp. at 7; ECF No. 11-3. Nevertheless, for present purposes, "factual disputes do not negate the appropriateness of court-facilitated notice." Quinteros, 532 F. Supp. 2d at 772. See also Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 280 (D.Minn. 1992) ("The fact that these allegations are disputed by defendants does not mean that plaintiffs have failed to establish a colorable basis for their claim that a class of similarly situated plaintiffs exist"). Defendants will have an opportunity, after discovery, to seek to decertify the class or file a motion for summary judgment if warranted.

Defendants dispute that Plaintiff is "similarly situated" to other members of the proposed collective action. For example, Defendants state that the "foreman" and "painter" positions have differing responsibilities. Def.'s Opp. at 8-9, ECF No. 11. However, this argument does not now prevail. The issue here is not whether the employees' responsibilities differ, but whether each of these employees who must travel off-site for work are paid for time spent away from the job site, regardless of what differing responsibilities they carry out during that time. As stated above, the allegations in the

Complaint and the statements in the Declarations suffice to present a plausible claim that the method by which Plaintiff and other employees were allegedly denied full wages was the same (i.e., not being paid for time worked away from the job site), regardless of the employees' specific job responsibilities.

Additionally, Defendants argue that this case should not proceed as a collective action because individualized inquiry is needed into each individual's claims. The case law is clear that the Plaintiff does not need to make a showing that the claims are "identical." Mackall, 2017 WL 6039717, at *2. It may be true that individual inquiry into the facts of each employee's time sheets will be necessary, but that would be more or less the same for any FLSA collective action. There would be a different situation presented if proposed party plaintiffs' claims were to be based upon alleged different methods or theories of under-compensation. Plaintiffs' allegations suffice to present a plausible claim that the method by which Plaintiff and other employees were allegedly denied full wages was the same, and the Court finds that proceeding with a collective action will be efficient under the circumstances.

Finally, an analysis of the other factors relied upon in Montoya supports a class certification with court-supervised

13

notice.  <u>Montoya v. S.C.C.P. Painting Contractors, Inc.</u>, No. CIV. CCB-07-455, 2008 WL 554114, at *2 (D. Md. Feb. 26, 2008).  For example, Plaintiff has made an adequate showing that there are other yet-unidentified coworkers in the same position and subject to the same pay practices.  To date, at least two persons (Sheila Tate and Darrell Delaney) have submitted their Notice of Consent to Become a Party Plaintiff.  ECF Nos. 13, 15.  The allegations extend back for several years, and if true, would reach a significant number of yet-unidentified former employees who were foremen, painters, and foreman/painters.[5]

---

[5] Plaintiff Gerben stated that Defendants typically employed at least five or six foremen at any given time, each foreman had a crew of two to five painters.  Gerben Decl. ¶¶ 8-9.

IV.   CONCLUSION

For the foregoing reasons:

1. Plaintiff's Motion for Conditional Certification of a Collective Class and to Facilitate Identification and Notice to Similarly Situated Employees [ECF No. 10] is GRANTED.

2. The Court hereby conditionally certifies a collective class under Section 216(b) of the FLSA.

    a. The collective class shall be defined as every individual who performs or has performed work as a Painter, Foreman, or Painter/Foreman for Defendants from May 16, 2014 to the present.

3. By January 29, the parties shall confer and seek to reach agreement upon the terms of the Notice.[6]

4. By February 2, the parties shall submit an agreed Notice or their separate proposals for the Notice along with a proposed schedule for the notice period, including the deadline to send out the notices and the deadline for the filing of all signed opt-in forms.[7]

5. By February 2, Defendants shall produce to Plaintiff's counsel a list of the full name, last known residential address, last known work address, last known phone number(s) and last known e-mail address of each and every individual who perform or performed work as a Foreman, Painter or Foreman/Painter for Defendants, from May 16, 2014 to the present.[8]

   SO ORDERED, this Thursday, January 18, 2018.

                                    /s/_____
                                 Marvin J. Garbis
                           United States District Judge

---

[6] The notice to potential plaintiffs.
[7] All date references herein are to the year 2018.
[8] For use solely in regard to the litigation of the instant case.